IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOHN W. LINDSEY,

    Petitioner,

v.                                                    Civil Action No. 5:11cv155
                                                    Judge Stamp

KUMA DEBOO,

    Respondent.

## REPORT AND RECOMMENDATION

### I. Procedural History

On November 1, 2011, the petitioner, John W. Lindsey, a federal prisoner, filed a *pro se* petition under the provisions of 28 U.S.C. §2241, challenging the computation of his federal sentence. Specifically, petitioner challenges the failure of the Bureau of Prison ("BOP") to include prior custody credit for time spent in state custody when computing his federal sentence.

Along with his petition, petitioner filed a motion to proceed *in forma pauperis* ("IFP") and a prisoner trust account statement. On November 2, 2011, the Clerk issued a notice of deficiency, directing petitioner to provide his complaint, IFP motion and trust account statement on court-approved forms. Accordingly, on November 23, 2011, petitioner filed his required court-approved forms. By Order entered November 28, 2011, petitioner's IFP motion was granted but he was directed to pay the full filing fee. On January 12, 2012, petitioner paid his filing fee.

On February 8, 2012, the undersigned made a preliminary review of the file, determined that summary dismissal was not warranted at that time, and directed the respondent to respond to the petition. Also on February 8, 2012, an Order was entered, directing petitioner to provide copies of his administrative grievances filed. On February 14, 2012, petitioner filed copies of his filed grievances.

On March 7, 2012, the respondent filed its Motion to Dismiss or for Summary Judgment and Response to Show Cause, with a Memorandum in support.

Because petitioner was proceeding *pro se,* on March 9, 2012, a Roseboro[1] Notice was issued. On March 23, 2012, the petitioner filed a Reply in Response to the Motion to Dismiss.

This matter, which is before the undersigned for a Report and Recommendation pursuant to LR PL P 83.09, is ripe for review.

## II. Facts

On May 27, 1994, petitioner was arrested in Granite City, Illinois on state drug and sex charges. On June 13, 1994, he was sentenced by the state of Illinois to a seven year term of imprisonment. On July 7, 1994, he was released by the Madison County Sheriff's Department to the Illinois Department of Corrections ("DOC"). He was subsequently borrowed from the Illinois DOC on a writ of *habeas corpus prosequendum* to answer for charges in the Southern District of Illinois. On August 25, 1995, after a twenty-two day trial, petitioner was convicted in District Court for the Southern District of Illinois, East St. Louis on drug and weapon charges. On April 24, 1996, he was sentenced to a term of 420 months, 360 months on Count 1 and 120 months on Count 21, to be served concurrently, and a term of 60 months on Count 16, to be served consecutive to terms of Counts 1 and 21. (Dkt.# 19-1 at 9). The Court ordered that petitioner's federal sentence run concurrently with his state sentence, and that he be incarcerated first with the Illinois DOC. Upon completion of his state sentence, he was to serve the remainder of his sentence at a federal facility. (Id.). Accordingly, he was returned to state custody. After completing his state sentence, petitioner was transferred into BOP custody on September 8,1997.

---

[1] Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (finding that the court must inform a *pro se* plaintiff of his right to file material in response to a motion for summary judgment).

Petitioner filed a timely appeal of his federal conviction with the 7th Circuit Court of Appeals. By opinion entered on September 18, 1997, the 7th Circuit Court of Appeals affirmed in part and reversed and remanded in part.

On remand, by Order entered on December 3, 1997, petitioner's November 13, 1997 motion to dismiss Count 16 was granted. On December 16, 1997, petitioner was re-sentenced to a term of 360 months on counts 1, 21, and 22. (Id. at 15). Petitioner received Willis[2] credit toward his federal sentence from May 27, 1994, the date of his state arrest, through June 12, 1994, the day before his state sentence was imposed. (Id. at 2).

The petitioner is presently incarcerated at FCI Gilmer in Glenville, West Virginia. He has a projected release date, on which he will have completed serving his federal sentence, of June 20, 2022. (Id.).

### III. Issues Presented

#### A. The Petition

Petitioner challenges the accuracy of the BOP's computation of his federal sentence, alleging that the BOP failed to include credit for time petitioner served in a state prison, despite the sentencing judge's Judgment and Commitment order that the undischarged term of petitioner's state sentence was to be run concurrently with petitioner's federal sentence, in accordance with U.S.S.G. §5G1.3(b), "as it was used as relevant conduct in" his federal sentence. He asserts that he has exhausted his administrative remedies with regard to his claim.

As relief, he requests that this Court reinstate "Judge Stiehl's Commitment Order for concurrent time or in the alternative remand with instructions to my sentencing court to correct the error in accordance with U.S.S.G. §5G1.2(b) in reference to the relevant conduct."

#### B. Motion to Dismiss or for Summary Judgment

---

[2] Willis v. United States, 438 F.2d 923 (5th Cir. 1971).

In support of his Motion to Dismiss, the respondent argues that the petition should be dismissed because petitioner fails to state a claim upon which relief can be granted, because his sentence has been properly calculated and he has already been given prior custody credit toward his federal sentence.

**C. Petitioner's Response to Motion to Dismiss**

Petitioner generally reiterates his claims and attempts to refute the respondent's arguments on the same.

As relief, he requests that this Court grant him summary judgment on his claim for concurrent time, and any other relief to which he might be entitled.

## IV. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not

4

assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues

5

of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

### V. Analysis

In general, a federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Nevertheless, in some cases, a federal sentence may begin prior to the date the Attorney General gains physical custody of the defendant. Title 18 U.S.C. Section 3621(b) gives the Bureau of Prisons the authority to "designate the place of [a] prisoner's imprisonment." Therefore, when a federal court orders its sentence to run concurrently with a previously imposed state sentence, a *nunc pro tunc* designation can be made, whereby the Bureau of Prisons designates a state facility as the place for service of a federal sentence. See United States v. Evans, 159 F.3d 908, 911-12 (4th Cir. 1998)(a federal sentence may commence on a defendant who is already in state custody "if and when the Attorney General or the Bureau of Prisons agrees to designate the state facility for service of the federal sentence."). However, the earliest possible date a sentence can commence is the date it is imposed. See United States v. McLean, 867 F2.d 609 (4th Cir. 1989)(unpublished) ("A federal sentence cannot commence prior to the date it is pronounced. Consequently, when a federal sentence is ordered to run

concurrently with a sentence being served, it can only run concurrently with that part of the prior sentence remaining to be served.")

However, the mere fact that state prisoner is in federal court pursuant to a federal writ of habeas corpus *ad prosequendum* does not mean that the prisoner's federal sentence has begun to run. "Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation." Id. at 912. See also Thomas v. Whalen, 962 F.2d 358, 361 n.3 (4th Cir. 1992)("A prisoner is not even in custody for purposes of section 3568 when he appears in federal court pursuant to a writ *ad prosequendum*; he is merely 'on loan' to federal authorities.").

In the instant case, the federal court sentenced the petitioner on April 24, 1996, and ordered his federal sentence to run concurrently with the state sentence he was already serving. The Attorney General, through the Federal Bureau of Prisons, is responsible for computing federal terms of imprisonment. See United States v. Wilson, 503 U.S. 329 (1992). In making this computation, the BOP must adhere to 18 U.S.C. § 3585(b), which provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences (1) as a result of the offense for which the sentence was imposed or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; **that has not been credited against another sentence.**

(emphasis added).

The United States Supreme Court has held that under 18 U.S.C. § 3585(b), "Congress made clear that a defendant could not receive double credit for his detention time." Wilson, *supra* at 337. Therefore, under 18 U.S.C. § 3585(b), prior custody credit cannot be awarded if the prisoner has received credit towards another sentence. See U.S. v. Brown, 977 F.2d 574 (4th Cir, 1992)(Defendant may receive credit against his federal sentence for time spent in official detention prior to the date his sentence commences **unless it has been credited against another sentence**).

7

(emphasis added); U.S. v. Goulden, 54 F.3d 774 (4th Cir. 1995)(credit is only available for time spent in custody which has not been credited against another sentence).

Under certain circumstances, a prisoner can be entitled to prior custody credit toward a federal sentence for time also applied to a prisoner's state sentence. This exception to the rule that prisoners cannot receive double credit occurs where state and federal sentences are concurrent, and crediting only the state sentence would not provide any benefit to the prisoner. See Willis v. United States, 438 F.2d 923 (5th Cir. 1971). Willis, free on bail on federal charges, was arrested on state charges. His federal bail was revoked and he was also denied bail on the state charges by the lodging of the federal detainer. After the district court denied his request for credit, he appealed, and on remand, was granted credit on his federal sentence, only for the pre-sentence time in custody in connection with the federal offense, but not for any time serving his state sentence for offenses unrelated to the federal charges.

Here, consistent with the holding in Willis, petitioner was given pre-sentence time credit from May 27, 1994, the date of his arrest on state charges, through June 12, 1994, the day before his state sentence commenced. He is not entitled to any further credit on his federal sentence, because Willis does not provide for the application of prior custody credit once any other sentence commences. Accordingly, petitioner cannot receive any additional credit for time spent serving his state sentence before his federal sentence was imposed, because to do so would award impermissible double credit.

### VI. Recommendation

For the foregoing reasons, the undersigned recommends that the respondent's Motion to Dismiss or in the Alternative, for Summary Judgment (Dkt.# 18) be **GRANTED** and the petitioner's § 2241 petition be **DISMISSED with prejudice**.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, **or by April 11, 2012**, any party may file with the Clerk of Court written objections identifying those

portions of the recommendation to which objection is made and the basis for such objections. A copy of such objections should also be submitted to the United States District Court Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

      The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk is further directed to provide a copy of this Report and Recommendation to any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: March 28, 2012

                                    /s/ James E. Seibert
                                    JAMES E. SEIBERT
                                    UNITED STATES MAGISTRATE JUDGE